**Jane E. MORRIS, Appellant,**

v.

**Louis W. SULLIVAN, Secretary, Department of Health and Human Services, Appellee.**

No. 88–5366.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 26, 1990.

Decided March 2, 1990.

Richard K. Gilbert, Washington, D.C., for appellant.

Daniel J. Standish, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Susan A. Nellor, Asst. U.S. Atty., Washington, D.C., also entered an appearance, for appellee.

Before WALD, Chief Judge, and RUTH BADER GINSBURG and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

In 1982, appellant, Jane E. Morris, applied to the Social Security Administration ("SSA" or "agency") for childhood disabili-

ty benefits. The agency denied her claim. In 1984, appellant petitioned the agency to reopen her claim. Consecutively, agency staff members, an Administrative Law Judge ("ALJ") and an Agency Appeals Council denied her petition.

Here, appellant asks us to review two orders of the district court related to the 1984 SSA proceedings. In the first, the court found it had jurisdiction pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), ("Act") to review the Secretary's denial of Morris' petition to reopen. After reviewing the record, the court found that the SSA's denial of Morris' petition was supported by substantial evidence and therefore dismissed her claim. The court also rejected a due process argument made by Morris. In its second order, the court denied appellant's motion to amend the prior judgment. The court also vacated the reasoning of its prior order, finding that 42 U.S.C. § 405(g) did not confer jurisdiction to review the 1984 SSA determination and that the court did not have jurisdiction to hear Morris' due process claim.[1]

We affirm the district court's ultimate finding that it did not have jurisdiction to hear Morris' appeal.

## I. BACKGROUND

### A. The Regulatory Scheme

Under Title II of the Social Security Act, a claimant who demonstrates that she suffers a physical or mental disability within the meaning of the Act is entitled to disability benefits. 42 U.S.C. §§ 416(i), 423. A claimant begins the administrative process by filing a claim with the SSA. If her claim is denied, regulations provide the claimant with a sixty day window within which to seek administrative reconsideration. § 404.909 (1986). Should that request prove unsuccessful, the claimant has sixty days to request an evidentiary hearing before an ALJ, 42 U.S.C. § 405(b), and a discretionary appeal from an adverse determination of the ALJ lies to the Appeals Council. 20 C.F.R. §§ 404.968–404.976.

---

1. The court reiterated, however, that there was no merit to Morris' due process claim.

Finally, § 205(g) of the Act, 42 U.S.C. § 405(g), authorizes federal judicial review of "any final decision of the Secretary [of the Department of Health and Human Services ("HHS")] made *after a hearing* to which [the claimant] was a party...." (emphasis added).

The Act and regulations thus create an orderly scheme for the *original* processing of claims filed with the SSA. Additional regulations, however, provide for *reconsideration* of prior claims. Under these regulations, a claimant is entitled to have her original claim reopened if she files for reconsideration within 12 months of the date of the decision on her original claim. Alternatively, if a claimant files for reconsideration after 12 months but less than four years from the decision on her original claim, she is entitled to reconsideration only "upon a finding of good cause," which exists if new material evidence is provided or specific errors are discovered. 20 C.F.R. §§ 404.988(a) & (b), 404.989.

### B. *Appellant's Case*

In 1982, Jane Morris filed a claim with the SSA for childhood disability benefits alleging that she had been disabled by Crohn's disease, a chronic inflammatory disorder, prior to her twenty-second birthday (age 22 is the cutoff for childhood disability benefits. 42 U.S.C. § 402(d)(1)(B)). Her claim was denied. Morris did not seek further administrative review, nor did she seek judicial review.

In 1984, Morris filed a second claim for childhood disability benefits supported by additional evidence. An agency staff member again rejected her claim, stating:

> We have determined that you are not entitled to childhood disability benefits.

After carefully studying your records, including the medical evidence, and considering your education and training, it has been determined that, within the meaning of the law, your condition was not disabling before you became age 22. In reaching this decision, we also considered how much your condition has affected your ability to work.

Notice of Disapproved Claim, Record 75–76. This time, Morris did timely request reconsideration, which an agency staff member denied. The Notice of Reconsideration stated:

> Upon receipt of your request for reconsideration we had your claim independently reviewed by a physician and disability examiner in the State Agency which works with us in making disability determinations. The evidence in your case has been thoroughly evaluated; this includes the medical evidence and the additional information received since the original decision. We find that the previous determination denying your claim was proper under the law....

Record at 78. Morris then hired counsel and requested a hearing before an ALJ. The ALJ was not required by § 405(b) to grant Morris' request since § 405(b) only mandates evidentiary hearings to review SSA denials of "appli[cations] for payment[s]," and as shown below, the courts have interpreted this phrase as encompassing only new claims and not petitions to reopen old ones.[2] Nonetheless, authorized by § 405(b)'s grant of discretionary authority to hold hearings, the ALJ granted Morris' hearing request in order to determine whether Morris' claim was worthy of reopening.[3] At the hearing, the ALJ asked Morris to provide him with a memorandum

---

**2.** Morris initially styled her reapplication as a new claim. However, a letter she wrote to the ALJ prior to the hearing asking for payments retroactive to her earlier claim makes clear that she was in effect petitioning for reopening.

**3.** Section 405(b) provides in relevant part:
The Secretary is directed to make ... decisions as to the rights of any individual *applying for payment* under this subchapter. Upon request by any [ ] individual ... who makes a showing in writing that his or her rights may

be prejudiced by any decision the Secretary has rendered, he *shall* give such applicant ... reasonable notice and opportunity for a hearing with respect to such decision.... Any such request with respect to such a decision must be filed within sixty days after notice of such decision is received by the individual making the request. The Secretary is further authorized ... to hold such hearings ... as he *may* deem necessary or proper....
(Emphasis added.)

that digested the new evidence and labeled it by exhibit number. The ALJ concluded the hearing by advising appellant that he would "leave the record open" pending review of the memorandum and "'consider[ation of] all the evidence plus the testimony that was given here today....'" Record at 43.

In his decision, Record 18–22, the ALJ ruled that there was not "good cause" to reopen the 1982 claim. The decision read in relevant part:

> After the denial of claimant's initial application for benefits, more than twevel (sic) months expired before she filed the application that is currently before the [ALJ]. Accordingly, the previous determination ... is the final decision of the Secretary, unless it can be determined "good cause" exists to reopen the determination made upon claimant's first application. The record indicates that the determination was based on medical reports concerning claimant's treatment from 1966 through 1981.... No additional evidence concerning claimant's conditions prior to the time she attained age 22 has been submitted.... There is no basis to conclude that new and material evidence has been furnished....

Morris requested review by the Appeals Council, which dismissed her "request for a rehearing."

Morris then filed suit in district court claiming that the ALJ's finding that no "good cause" existed to reopen the 1982 claim was without factual support and was arbitrary and capricious. The Secretary of HHS moved to dismiss, arguing that *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), precluded the court from hearing the case. In *Sanders*, the Supreme Court held that § 405(g) limits judicial review of final decisions of the Secretary to those made after mandatory § 405(b) hearings or to those alleged to be unconstitutional.[4] The Court thus found that it did not have jurisdiction to review the Secretary's denial of appellant's peti-

tion to reopen his prior claim since no § 405(b) hearing, mandatory or discretionary, had been held.

In response, Morris amended her complaint in an attempt to bring her claim within *Sanders'* exception for constitutional claims. She alleged that she was denied due process because the ALJ did not consider the new evidence she had submitted. Morris also argued that review under § 405(g) was available because *Sanders* does not apply to claims such as hers that have been reopened *de facto* by the agency.

The district court granted Morris' motion to amend her complaint to add the constitutional claim. It also agreed with Morris that *Sanders* does not preclude judicial review pursuant to § 405(g) where, despite formal findings by the agency to the contrary, the agency has in fact reopened a claim. Nonetheless, after reviewing the record, the court concluded that the agency's rejection of Morris' claim was supported by substantial evidence. It also found Morris' due process rights had not been violated.

Morris subsequently moved to amend the judgment. The district court denied the motion. It also, *sua sponte*, vacated the reasoning of its prior order, finding that *Sanders* did preclude jurisdiction pursuant to § 405(g) and that the court did not have jurisdiction to hear Morris' due process claim.

## II. ANALYSIS

Morris appeals, arguing that *Sanders* is not dispositive for two reasons. First, she reiterates that *Sanders* does not apply to cases such as hers where (as she views it) petitions to reopen are granted in substance but denied in form. Also, failing to recognize that the district court ultimately found it lacked jurisdiction to hear her due process claim, Morris argues that it erred in rejecting her due process claim on the merits. Thus she asks us to remand the case to the ALJ to specifically address the

---

4. The Court also held that § 10 of the Administrative Procedure Act does not afford an implied grant to the district courts of subject-matter jurisdiction to review a decision by the Secretary not to reopen a prior claim.

new evidence she submitted in her 1984 petition to render a decision on the merits of her claim.

We address Morris' jurisdictional argument first and affirm the district court's finding that it lacked jurisdiction under § 405(g) to review the Secretary's denial of Morris' petition to reopen. We next reach Morris' due process argument and similarly treat it as contesting the court's finding that it lacked jurisdiction to hear Morris' constitutional claim.[5] We affirm that finding.[6]

### A. *Jurisdiction Under § 405(g)*

■ Contrary to Morris' contention, *Sanders* does control this case. In *Sanders*, as here, appellant filed a claim with the SSA alleging the same bases of eligibility for disability benefits that he had alleged in a claim seven years earlier. The ALJ viewed the new application as barred by *res judicata*, but also treated the application as requiring a determination of "'whether the claimant is entitled to have his prior application reopened....'" *Sanders* 430 U.S. at 103, 97 S.Ct. at 983. Without holding a hearing, the ALJ con-

cluded that respondent's evidence was merely repetitious and cumulative, and consequently denied reopening and dismissed the claim.

On appeal, the district court dismissed the claim for lack of jurisdiction. The Court of Appeals reversed, finding jurisdiction conferred by § 10 of the APA. The Supreme Court reversed the Court of Appeals, holding that § 10 of the APA did not confer jurisdiction and that § 405(g) of the Act limits judicial review of final decisions of the Secretary to those made after mandatory § 405(b) hearings.[7]

Morris, however, does not read *Sanders* this way. Rather, she understands the holding of that case to be that "a final decision ... not to reopen a claim [is] not subject to judicial review under ... § 405(g)." Appellant's Brief at 14. She thus argues as she did below that *Sanders* is distinguishable because her claim was in fact reopened as a matter of law prior to the Secretary's formal conclusion to the contrary. In making this argument, Morris relies primarily on language from *Poulin v. Bowen*, 260 U.S.App.D.C. 142, 817 F.2d 865 (1987.)[8] That language reads:

**5.** As noted, we realize that Morris failed to raise an objection to the district court's denial of jurisdiction to hear her due process claim and instead argued only the merits of that claim. Nonetheless, in the interest of closure, we raise the jurisdictional issue *sua sponte*.

**6.** Since these rulings conclusively dispose of all aspects of Morris' claim, we need not reach her request for remand to the ALJ.

**7.** This rule regarding the scope of review under § 405(g) is not stated in any single sentence in Justice Brennan's opinion, but the decision's progression makes clear that this is one of two rules of the case. Justice Brennan first writes that § 405(g) by its terms limits judicial review of decisions of the Secretary made after a hearing. *Sanders*, 430 U.S. at 108, 97 S.Ct. at 985. He then makes clear that he is referring to § 405(b) hearings by explaining that the reason the Court in *Sanders* did not have jurisdiction was that "a petition to reopen a prior final decision may be denied without a hearing as provided in ... § 405(b).... *See Cappadora v. Celebrezze*, 356 F.2d 1, 4 (CA2 1966) ..." *Id.* The citation to *Cappadora*, which is discussed at length below, demonstrates that Brennan was referring to mandatory § 405(b) hearings because *Cappadora* stands for the proposition that judicial review does not lie for discretionary

hearings. *Id.* ("In [the] context [of § 405(b)], the reasonable reading of § 405(g) is that it was intended to apply to a final decision rendered after a hearing thus made mandatory, not to a decision which could lawfully have been made without any hearing at all and in that event plainly would not have come under the terms of the section.").

**8.** In *Poulin*, we held that the agency had reopened a prior claim because the ALJ explicitly stated that he was reconsidering appellant's original claim on the merits. Morris readily concedes, however, that factually, *Poulin* is distinguishable from her case in two important ways. First, while the ALJ in *Poulin* explicitly noted that appellant's claim was "'potentially subject to a *res judicata* dismissal,' the [ALJ] declined to exercise his discretion to dismiss, stating that 'because of the claimant's allegation of a continuing disability the current 1980 applications are being adjudicated *on the merits.*'" *Poulin*, 817 F.2d at 869 (emphasis added). By contrast, no decisionmakers in Morris' case suggested they were reconsidering appellant's 1982 claim on the merits. Rather, they merely evaluated the evidence proffered by Morris to determine whether her claim was worthy of reopening. *Poulin* is further distinguishable from the case *sub judice* in that the Secretary in *Poulin*

[E]ven though the subsequent claim may be the same claim for res judicata purposes, if it has nevertheless been reconsidered on the merits *to any extent and at any administrative level,* it is thereupon properly treated as having been, to that extent, reopened as a matter of administrative discretion.... In that event a final decision of the Secretary denying the claim is also subject to judicial review to the extent of the reopening.

*Poulin,* 817 F.2d at 869, citing *McGowen v. Harris,* 666 F.2d 60, 65–66 (4th Cir.1981) (emphasis added). Morris then contends that the agency's and the ALJ's examination of the new evidence she proffered met the "to any extent at any administrative level" standard of reopening articulated in *Poulin.* While we admit that the language cited might by itself support Morris' claim that her petition was in fact reopened on the merits, such a reading would conflict with the § 405(g) rule enunciated in *Sanders* and thus we must reject it. It is clear from *Sanders* that agency officials and ALJs may consider the merits of a petition to reopen in any number of ways that do not involve the holding of a mandatory § 405(b) hearing. Indeed, that is precisely what happened here, where the ALJ held a preliminary hearing to evaluate the new evidence so as to determine whether Morris' claim should be reopened and its merits entirely reconsidered.[9]

We are of course bound to construe *Poulin,* if at all possible, in a way that does not conflict with the Supreme Court's ruling in *Sanders,* and so we do. We interpret it as applicable only when the agency has clearly stated or otherwise demonstrated that it has in fact reopened the original case on the merits and consequently has held a mandatory § 405(b) hearing to reconsider the prior claim afresh.[10] But even were we

not compelled to such an interpretation to accommodate Supreme Court precedent, we would be attracted to the *Sanders* rationale as the one most consistent with the regulatory scheme set up by Congress for processing benefits claims. As the Second Circuit explained in a similar case involving a petition to reopen, subjecting agency decisions not to reopen to judicial review would not only interfere with the expeditious processing of claims but would disadvantage applicants for reopening.

On a strictly literal reading, § 405(g) could be interpreted as applying to any final decision of the Secretary that was handed down after a hearing, albeit a hearing not required by the statute. Such an interpretation, however, would be unnatural and unsound.... In enacting the Social Security Act, Congress recognized that the agency established to carry out such a vast scheme of public insurance would be confronted with a volume of applications probably unparalleled in federal administration.... Accordingly, in addition to wide-ranging powers suitable to effective achievement of the assigned task, the agency was authorized to make an initial determination of each claim *ex parte* and ... was compelled to hold a hearing in only one instance—where an adverse *ex parte* determination had been made and timely request for a hearing was filed, 42 U.S.C. § 405(b). In this context, the reasonable reading of § 405(g) is that it was intended to apply to a final decision rendered after a hearing *thus made mandatory, not to a decision which could lawfully have been made without any hearing at all* and in that event plainly would not have come under the terms of the section.... Indeed, the broader reading [might] operate adversely to claimants

---

failed to plead *res judicata* as a defense, thereby waiving his right to interpose it. Here, the Secretary raised *res judicata* in his pleadings.

**9.** The record does not indicate precisely how the ALJ characterized this hearing. However, as noted above (in note 2, *supra* ), Morris made it clear in a letter she wrote the ALJ prior to the hearing that she had previously applied for benefits for the same disability. Record at 32. Thus the ALJ must have considered the claim a

petition to reopen and not a new claim. We therefore assume that the ALJ considered the hearing authorized by that part of § 405(b) vesting the Secretary with authority to grant discretionary hearings as they "[m]ay deem necessary or proper."

**10.** The ALJ in *Poulin,* it appears, held such a hearing.

generally since if a nonmandatory hearing would entail judicial review not otherwise available this might deter the agency from giving a procedural protection which the statute does not demand.

*Cappadora,* 356 F.2d at 4–5 (emphasis added). The court thus found no jurisdiction to review the Secretary's denial of the appellant's petition to reopen.

*Cappadora's* reasoning applies to any discretionary proceeding held by an ALJ, but it is most compelling in situations like the one presented here, where appellant appears to argue that the agency's review of the new evidence she submitted in and of itself constituted a reopening of her old claim and that judicial review is therefore available. Accepting that rule would place the agency in the quintessential "Catch-22." Every time a claimant petitioned the agency to reopen an old claim based on newly submitted evidence, the agency would be faced with a choice: Looking at the evidence to determine if it really is new and material, thereby risking a whole new round of appeals, or blindly denying the petition so as to avoid judicial review. Subjecting the agency to such a choice is obviously absurd. The agency must have more latitude in such cases so that it will process petitions to reopen both expeditiously and fairly. The Fourth Circuit has reasoned similarly:

> Of necessity when a social security claimant presents any claim that is arguably the same one earlier denied on the merits, the Secretary must in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim, and if so, whether it should nevertheless be reopened as a discretionary matter....
>
> In fairness to the claimant, the results of this threshold inquiry may be reported as a prelude to reporting the dispositive

administrative action taken.... Thus, an ALJ may state in a formal decision that ... [the] new evidence ... was not sufficiently "new and material" to warrant reopening.... When, as here, this is followed by a specific conclusion that the claim should be denied on res judicata grounds, the threshold inquiry into the nature of the evidence should not be read as a reopening of this claim on the merits.

*McGowen,* 666 F.2d at 67–68. *See also Torres v. Dept. of Health and Human Services,* 845 F.2d 1136, 1139 (1st Cir.1988) (the ALJ was entitled to make a threshold inquiry and review the evidence presented by the claimant in order to resolve the reopening issue without subjecting herself to judicial review by so doing); *Krumpelman v. Heckler,* 767 F.2d 586, 588–89 (9th Cir.1985).

It is not only the rational administration of SSA benefits claims, however, that leads us to prefer *Sanders'* strict interpretation of § 405(g)'s reviewability grant. Adhering to the result desired by appellant would also conflict with the traditional model of federal judicial review of agency decisions. Courts do not normally review the interim actions of ALJs and lower level agency officials. Rather, they review final agency decisions. Here, the ultimate decision of the agency was made by the Appeals Council, which made clear that it was denying the petition to reopen.[11] It is that decision only that constitutes "the final decision" of the agency; and clearly, *Sanders* denies us jurisdiction to review that affirmance of the ALJ's denial.[12]

**B.** *The Due Process Issue*

■ Morris argues in the alternative that *Sanders* does not control this case because the district court erred in rejecting

---

**11.** Morris argues that the Appeals Council's decision to "dismiss [Morris'] request for a hearing" is without legal effect because Morris had requested review of a hearing that had already been held—the hearing before the ALJ.

We find this mistake harmless, as the decision of the Appeals Council also clearly affirms the ALJ's finding that Morris' claim was barred by *res judicata.*

**12.** There is a recent Fourth Circuit case holding, on facts similar to those here, that the agency had reopened appellant's benefits claim. *Cleaton v. Dep't. of Health and Human Services,* 815 F.2d 295 (4th Cir.1987). We disagree with its result.

her due process contention and *Sanders* carves out an exception for constitutional claims. *Sanders*, 430 U.S. at 109, 97 S.Ct. at 986 ("This is not one of those rare instances where the Secretary's denial of a petition to reopen is challenged on constitutional grounds."). That was in fact the decision of the district court in its first order. In its second order, however, the district court found that it did not have jurisdiction to hear Morris' constitutional claim and had erred in finding to the contrary in its first order. Thus Morris put the cart before the horse by arguing the merits of her due process claim before explaining what gives us the authority to hear it. We therefore raise the jurisdictional issue *sua sponte* and affirm the district court's finding.

While *Sanders* does provide jurisdiction for legitimate constitutional claims, the Supreme Court has explained elsewhere that courts are not required to entertain frivolous claims merely because they are cloaked in constitutional garb. *See Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("[A] suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution ... clearly appears to be ... made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous."). The district court correctly recognized Morris' due process argument to be such a claim.

Appellant contends that she was denied due process because, she alleges, the ALJ did not look at the evidence she submitted. Her only support for this contention, however, is one poorly drafted sentence in the ALJ's decision which states that "[n]o additional evidence concerning claimant's condition prior to the time she attained age 22 has been submitted."

The ALJ specifically asked Morris at the end of the hearing to submit a memorandum digesting the new evidence she was submitting; he also referred elsewhere in his opinion to "new and material" evidence.

Accordingly, we cannot credit the claim that the ALJ failed to look at that evidence. As the Supreme Court has explained elsewhere, "The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chemical Foundation*, 272 U.S. 1, 14–15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). There is no indication other than a slip of the pen that the ALJ did not review the new evidence; he simply miswrote; he undoubtedly meant to say, as he did a few lines later in his decision, that no new *material* evidence was submitted.[13]

### III. Conclusion

*Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), held that § 405(g) of the Act limits judicial review of final decisions of the Secretary to those made after mandatory § 405(b) hearings. Since the hearing held by the ALJ was discretionary, we are without § 405(g) jurisdiction to review the Secretary's denial of Morris' petition to reopen her prior benefits claim.

Moreover, because Morris has not made out a colorable due process claim, we are without jurisdiction to entertain her constitutional claim.

Accordingly, we affirm the district court's ultimate finding that it did not have jurisdiction to hear Morris' claim.

*Affirmed.*

---

**13.** Moreover, *Sanders* explained that "a petition to reopen a prior final decision may be denied without a hearing," 430 U.S. at 108, 97 S.Ct. at 986; thus no hearing at all was necessary to satisfy due process, and the ALJ was certainly not required to provide Morris with all procedural protections attendant to a hearing required by due process.