89 F.3d 823
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Carmen H. RIVERA, Plaintiff, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.
 No. 95-2185.
 United States Court of Appeals, First Circuit.
 July 5, 1996.
 
 Paul Ramos Morales on brief for appellant.
 Guillermo Gil, United States Attorney, Rosa E. Rodriguez-Velez, Acting Chief Civil Division, and Robert M. Peckrill, Assistant Regional Counsel, Social Security Administration, on brief for appellee.
 Before Before TORRUELLA, Chief Judge, CYR and STAHL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant Carmen Rivera filed an application for Social Security disability benefits on March 28, 1991, alleging an onset date of November 28, 1988. The application was denied on August 8, 1991 and claimant did not seek reconsideration. Instead, she filed a new application on January 21, 1993, alleging the same onset date and listing as impairments a herniated disc and nerves. Claimant's insured status expired on December 31, 1993. An administrative law judge (ALJ) held a hearing in October 1993 at which claimant and a vocational expert (VE) testified.
 
 
 2
 The ALJ first determined not to reopen claimant's initial application with the result that he did not consider evidence from the time period prior to August 8, 1991. The ALJ then decided that claimant suffered from severe uncontrolled arterial hypertension, a small herniated disc, costochondritis, and an affective disorder. These conditions, the ALJ opined, prevented her from performing her past work as a meat packager, a job requiring medium exertion. Further, the ALJ stated that claimant was prohibited from performing complex or detailed tasks and engaging in work in which she could not change position. Using the grid as a framework and the testimony of the VE, the ALJ nonetheless concluded that there were other, light-duty jobs which claimant could perform. The Appeals Council denied claimant's request for review and the district court affirmed this decision.
 
 
 3
 Claimant argues on appeal that the ALJ's decision not to reopen her first application for disability benefits is reviewable. "Absent a colorable constitutional claim ... a district court does not have jurisdiction to review the Secretary's discretionary decision not to reopen an earlier adjudication." Torres v. Secretary of Health and Human Services, 845 F.2d 1136, 1138 (1st Cir.1988) (per curiam) (citing cases). To come within this exception, claimant asserts that the determination not to reopen violated her due process rights because the ALJ never had held a hearing on her first request for benefits. However, claimant does not assert that she was denied the opportunity for a hearing and it does not appear that she requested one. We have held, in similar circumstances, that such a claim is not colorable. See Matos v. Secretary of HEW, 581 F.2d 282, 284-86 (1st Cir.1978). Thus, we consider, as did the ALJ, only the evidence for the period after August 8, 1991 through December 31, 1993.
 
 
 4
 1. Back Condition. Although claimant received treatment for her back at the State Insurance Fund during 1988 and 1989, there are no records of any treatment for the period 1990 through 1993. The other evidence for the relevant time--consultative examinations, two RFC assessments, and a report from claimant's treating physician--is conflicting.
 
 
 5
 For example, Dr. Roberto Leon Perez, an internist and rheumatologist, performed a consultative examination in July 1991. He reported that claimant could walk on her toes, but that her flexion/extension was somewhat limited (70 degrees). An x-ray showed (1) narrowing of the L4-L5 intervertebral space, (2) narrowing of the L5-S1 intervertebral space associated with posterior spondylosis (fusion of a vertebral joint), (3) facet joint degenerative disease at L5-S1, and (4) reversal of normal lordosis. The diagnosis was herniated disc by history.
 
 
 6
 The other consultative examination was performed in March 1993 by Dr. Phillip Bonneaux. At this time, claimant had normal muscle tone and strength. Her gait also was normal and she had full range of motion of her back. There were moderate spasms of the paravertebral muscles. An x-ray showed slight scoliosis and minimal spondylosis. The diagnosis was moderate paravertebral muscle spasm. Dr. Bonneaux concluded that claimant could sit, stand, walk, lift and carry without limitation.
 
 
 7
 The two non-examining physicians who completed residual functional capacity (RFC) assessments in 1993 agreed that claimant retained the weight-lifting capacity consistent with light work. They also agreed that claimant could sit, stand and walk for up to six hours each per day. She could occasionally climb, stoop, crouch and crawl, and could frequently kneel.
 
 
 8
 Although claimant's treating physician, Dr. Francisco Sanchez, gave a significantly more restrictive view of claimant's RFC, the ALJ was not required to credit it. See 20 C.F.R. § 404.1527(d)(2) (if a treating physician's opinion is inconsistent with the other substantial evidence in the record, controlling weight need not be given to that opinion). Thus, the medical findings outlined above sufficiently support the ALJ's conclusion that claimant could perform light work. See Rodriguez v. Secretary of Health and Human Services, 647 F.2d 218, 222 (1st Cir.1981) (conflicts are for the Secretary to resolve).
 
 
 9
 2. High Blood Pressure. There are only two pieces of evidence relating to claimant's high blood pressure for the relevant period. First, claimant's treating physician, Dr. Sanchez, reported that he began seeing claimant in 1985 for high blood pressure. During the course of treatment, claimant experienced dizzy spells and chest pain. Dr. Sanchez opined that claimant's prognosis was guarded. However, he did not specify any limits on the activities in which claimant could engage. Second, Dr. Bonneaux, in a chest pain questionnaire, stated that the origin of claimant's chest pain was musculoskeletal. Although he opined that claimant's blood pressure should be controlled, he also did not list any limitations on the kinds of activities in which she could engage. Given the complete dearth of evidence that this condition limited the kinds of work-related activities in which claimant could engage, the record is more than adequate to support the Secretary's decision. See id.
 
 
 10
 3. Emotional Condition. As with claimant's back condition, the evidence concerning the effect of claimant's mental impairment is conflicting. Dr. Luis Toro, a psychiatrist, conducted three evaluations of claimant's mental status. In the first two reports, Dr. Toro described claimant as being in contact with reality, with appropriate affect. She was oriented and coherent, but her capacities for attention, concentration, and retention were somewhat diminished. Her memory was good and she exhibited good insight. Dr. Toro noted that claimant could handle funds and engage in normal interpersonal relationships. At the final examination, claimant appeared slightly depressed, but was spontaneous, logical, and oriented. Her concentration, attention, retention and memory were normal. Dr. Toro diagnosed a mild dysthymic disorder and stated that claimant's prognosis was fair.
 
 
 11
 A non-examining doctor, in 1993, found claimant's condition severe and diagnosed an affective disorder. As for work-related activities, the only areas in which claimant was rated as moderately limited were in dealing with detailed instructions and accepting instruction from others. Claimant was not significantly limited in all other areas.
 
 
 12
 In contrast to the above, claimant's treating physician opined that claimant had marked restrictions in the activities of daily living and was seriously impaired in relating to others. Dr. Sanchez also noted that claimant had hallucinations, autistic or regressive behavior, and suicidal ideation. He rated claimant as severely impaired in almost all areas relating to work. Dr. Sanchez concluded that claimant could not work.
 
 
 13
 The ALJ's decision essentially incorporates the assessments of the non-examining physician and Dr. Toro. Given the conflict between these assessments and the report of Dr. Sanchez, the ALJ did not err in not giving controlling weight to the latter's opinion. See Rodriguez Pagan v. Secretary of Health and Human Services, 819 F.2d 1, 3 (1st Cir.1987) (per curiam), cert. denied, 484 U.S. 1012 (1988).
 
 
 14
 4. Pain. Claimant alleges that the ALJ did not properly credit her allegations of totally disabling pain. See Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir.1986). Even assuming that the record from August 1991 through 1993 provided objective medical evidence of a back impairment that reasonably could be expected to cause pain, the dearth of evidence relating to sensory, motor, or strength deficits conflicts with the level of pain claimant asserts. Further, claimant told one examiner that she performed household chores and claimant generally reported a fairly active social life. Because the ALJ correctly considered the Avery factors, his decision regarding claimant's pain is supported by substantial evidence.
 
 
 15
 For the foregoing reasons, the judgment of the district court is affirmed.